01
02
03
04
05
06
07                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
08                              AT SEATTLE

09  DALE WILLIAMS,                    )   Case No. C06-1784-RSL-JPD
                                      )
10             Plaintiff,             )
                                      )
11       v.                           )
                                      )   REPORT AND RECOMMENDATION
12  MICHAEL J. ASTRUE, Commissioner,  )
    Social Security Administration,   )
13                                    )
               Defendant.             )
14  _____ )

15       Plaintiff Dale Williams appeals the final decision of the Commissioner of the Social

16  Security Administration ("Commissioner") which partially denied his application for Disability

17  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

18  XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

19  Administrative Law Judge ("ALJ"). The parties agree that the case should be reversed and

20  remanded; the sole issue is whether this Court should remand for further administrative

21  proceedings or for a finding of disability and the immediate award of benefits. For the reasons

22  set forth below, the Court recommends that the Commissioner's decision be REVERSED and

23  REMANDED for an award of benefits.

24                       I.  FACTS AND PROCEDURAL HISTORY

25       Plaintiff is a fifty-five year old divorced man with a high school education and some

26  credits toward a college degree. Administrative Record ("AR") at 56, 533. He previously

REPORT AND RECOMMENDATION
PAGE – 1

worked as a machinist, a manufacturing engineer for the Boeing Company for over ten years, and thereafter as a car salesman for a brief period. AR at 95, 231. Plaintiff was last gainfully employed in October 2001. AR at 533.

On July 15, 2003, plaintiff applied for DIB and SSI benefits alleging an onset date of October 31, 2001. AR at 56-58, 546. Plaintiff asserts that major depressive disorder, hearing loss, and severe back pain have kept him from obtaining and maintaining employment of any kind. AR at 15-16, 22; Dkt. No. 12 at 2-6.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 27-30, 32-33. On November 2, 2005, a disability hearing was held before the ALJ, who eventually concluded that plaintiff was disabled from the period of September 1, 2002 through February 1, 2004, but was not disabled thereafter based on his finding that plaintiff could perform a range of light work existing in significant numbers in the national economy. AR at 23. Plaintiff's administrative appeal of the unfavorable portion of the ALJ's decision was denied by the SSA Appeals Council, AR at 6-9, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 13, 2006, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

This Court, pursuant to 42 U.S.C. § 405(g), may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881

F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, settling conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to meticulously examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence of record is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

If this Court determines that the ALJ committed reversible error, it has the discretion to remand for further proceedings or to award benefits. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Remand for further proceedings is appropriate where additional proceedings would remedy defects in the ALJ's decision, *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989), and where the Commissioner is in a better position to evaluate the evidence. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  Remand for an award of benefits is preferred where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey*, 298 F.3d. at 1076; *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (same).  More specifically, erroneously rejected evidence should be credited and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain pertinent] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (same).

## IV.  EVALUATING DISABILITY

As the claimant, Mr. Williams bears the burden of proving that he is disabled within the meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful

activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof during steps one to four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled or not disabled at any step in the sequence, the inquiry ends without need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether that impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals a listing for the twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

01 in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

02 residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

03 Commissioner evaluates the physical and mental demands of the claimant's past relevant work

04 to determine whether he can still perform that work. *Id.* If the claimant is able to perform his

05 past relevant work, he is not disabled; if the opposite is true, the burden shifts to the

06 Commissioner at step five to show that the claimant can perform some other work that exists

07 in significant numbers in the national economy, taking into consideration the claimant's RFC,

08 age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

09 Commissioner finds the claimant is unable to perform other work, the claimant is disabled and

10 benefits may be awarded.

11 When, as here, an ALJ grants disability insurance benefits to an applicant for a closed

12 period of disability, additional sequential evaluation steps arise and two decision-making

13 processes occur. First, the ALJ finds the applicant disabled and grants benefits. Second, the

14 ALJ may engage in the "medical improvement" decision-making process to find that the

15 disability ended at some date prior to the hearing such that a closed period of disability is

16 proper. *See* 20 C.F.R. §§ 404.1594, 416.994.

## V. DECISION BELOW

18 On March 27, 2006, the ALJ issued a decision granting in part and denying in part

19 denying plaintiff's request for benefits, which found:

20     1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2006.

22     2.    The claimant has not engaged in substantial gainful activity since his alleged onset date.

24     3.    The medical evidence establishes that the claimant has the following "severe" impairments: major depressive disorder, dysthymia, chronic pain syndrome, and hearing loss.

26     4.    None of the claimant's impairments meets or equals the criteria of any impairment included in the *Listing of Impairments*.

5. The claimant's assertions concerning his ability to work cannot be fully credited.

6. The claimant retains the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to sit and to stand and/or walk intermittently for a total of six hours in an eight hour workday. He may occasionally climb ra scaffolds. He can occasionally stoop, crouch, and crawl. He is unable to work with hazards (machinery, heights, etc.). The claimant's hearing is lessened by 50 percent, and his word recognition is lessened by 35 percent. Despite his mental health impairment, he is able to perform simple, repetitive tasks. He should avoid working with the public.

7. The claimant is unable to perform the requirements of his past relevant work, which was in the following jobs: machinist, Dictionary of Occupational Titles (DOT) # 601.280-054, which is medium, skilled work; engineer planner, DOT # 003.161-014, which is light, skilled work; car sales, DOT # 273.353-101, which is light, skilled work; and telemarketing, DOT # 299.357-014, which is sedentary, semi-skilled work.

8. The claimant's residual functional capacity for the full range of light work is reduced by additional limitations.

9. On the date he filed his application, the claimant was 48 years old, which the regulations define as a "younger person." On March 6, 2002, he turned 50, which the regulations define as "closely approaching advanced age."

10. The claimant has a high school education plus some college.

11. The claimant has some skilled and semi-skilled work experience, but none of the claimant's skills acquired from prior work would transfer to any work that he is now capable of performing.

12. Considering the claimant's exertional and nonexertional limitations, he was unable, from September 1, 2002 to February 1, 2004[,] to make an adjustment to any work that exists in significant numbers in the national economy because he was unable to sustain a full and competitive work schedule on a regular and continuing basis.

13. The claimant was under a disability, as defined in the Social Security Act, from September 1, 2002 to February 1, 2004.

14. By February 1, 2004, the claimant experienced medical improvement, which was related to the claimant's ability to perform work related activities in that he was then able to sustain a full and competitive work schedule on a regular and continuing basis.

15. From February 1, 2004, the claimant has been capable of making an adjustment to work that exists in significant numbers in the national or regional economy, in the following jobs: (1) small parts assembler, [DOT #] 706.684-022, which is light, unskilled work, of which there are 500 jobs in Washington and 15,000 in the national economy; and gate guard, DOT # 372.667-030, which is light

REPORT AND RECOMMENDATION
PAGE – 6

work, on the low end of semi-skilled work, of which 500 jobs exist in
Washington and 20,000 in the national economy.

AR at 22-23.

## VI.   ISSUES ON APPEAL

The parties agree that the ALJ's decision below was deficient and should be reversed. More specifically, the Commissioner concedes that the ALJ erred in his assessment of plaintiff's credibility, erred in assessing plaintiff's physical RFC assessment, erred in his application of the "medical improvement" analysis, and erred in his step five finding that plaintiff perform "other work" as a gate guard and small parts assembler. Dkt. No. 20 at 11-15. Nevertheless, the Commissioner argues that the record does not clearly require a finding of disability.

The plaintiff raises the following primary allegations of error:  (1) whether the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony and finding him not fully credible; (2) whether the ALJ properly addressed and interpreted the medical expert testimony of Dr. Lewy; (3) whether the ALJ's physical RFC assessment is free of legal error and supported by substantial evidence; (4) whether the ALJ met his burden at step five; and (5) whether the ALJ properly found "medical improvement" under 20 C.F.R. §§ 404.1594, 416.994.  Dkt. No. 12 at 8-22.

The Commissioner does not directly contest these errors, but rather, urges that they be corrected upon remand.  Dkt. No. 20.  However, the parties disagree on the proper remedy—i.e., whether the case should be remanded for further administrative proceedings or for an immediate award of benefits.

## VII.   DISCUSSION

A.   <u>The ALJ Erred in His Assessment of the Plaintiff's Testimony and Credibility</u>

Credibility determinations are particularly the province of the ALJ. *Andrews*, 53 F.3d at 1043.  Nevertheless, when an ALJ discredits a claimant's testimony, he must articulate

specific and adequate reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

In doing so, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints" *Greger*, 464 F.3d at 972. General findings are insufficient. *Smolen*, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between his testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id.*

Here, the ALJ found that certain behavior by the plaintiff "cast[ed] doubt" on his credibility and, for that reason, the ALJ did not fully credit plaintiff's testimony concerning his ability to perform work-related functions. *See* AR at 17, 22. The sole conduct cited by the ALJ was the plaintiff's inconsistent answers to his providers regarding his criminal history. AR at 17. Specifically, the ALJ noted that "[a] record from April of 2003[] makes it clear that the claimant has a criminal history," and then strongly emphasized that "on February 6, 2004, the claimant reported that he had 'never been arrested.'" AR at 17 (citing Ex. 5F/10, Ex. 20F/22, Ex. 20F/13); *see also* AR at 382. The ALJ concluded that "[w]hile a criminal history alone is

REPORT AND RECOMMENDATION
PAGE – 8

01 not sufficient to cast doubt on a claimant's credibility, an inconsistent report to his providers,

02 regarding any subject, is." AR at 17.[2]

03       The problem with this reason is that the criminal history cited by the ALJ was not the

04 plaintiff's. Rather, it belonged to a Mr. William Davis. AR at 196.[3]  Apart from this

05 erroneous reason, the ALJ found that the plaintiff was "generally credible in his allegations,"

06 AR at 17, which included the plaintiff's testimony that, *inter alia*, he could not perform a job

07 that would require him to stand even intermittently during an eight-hour workday. AR at 549-

08 50. The VE agreed with the ALJ in this regard, and testified that if plaintiff's testimony was

09 found to be credible, he would be unable to work (or even get to work) at step five due to a

10 marked limitation in concentration, persistence, and pace. AR at 560-61.

11       The ALJ is responsible for making credibility determinations, and this Court is not

12 authorized to substitute its judgment for that of the ALJ. *Thomas*, 278 F.3d at 954. However,

13 that power is not unfettered. Absent affirmative evidence showing that the claimant is

14 malingering, the ALJ must provide clear and convincing reasons, supported by substantial

15 evidence, for rejecting the claimant's testimony. *Reddick*, 157 F.3d at 722. The ALJ failed to

16 do so here, and his oversight constitutes reversible error. Furthermore, save for this oversight,

17 the ALJ determined that the claimant was credible. AR at 17. Because there are no

---

[2] The Commissioner insists that the ALJ provided an additional reason for discounting the plaintiff's credibility when the ALJ stated, amid his written credibility analysis, that the plaintiff had "nevertheless been able to perform work related activities since February of 2004" and was "able to function at a level that would allow him to work." AR at 17-19; Dkt. No. 20 at 11-12. However, this is a legal conclusion regarding plaintiff's prospective abilities at step five, and as such, has little or nothing to do with the plaintiff's credibility or the *actual* transferrable activities that might provide a window into that credibility.

[3] The Commissioner has conceded that pages 196 and 197 of the administrative record constitute criminal records pertaining to an individual other than the plaintiff, and the Court has since redacted those pages from the record. *See* Dkt. Nos. 17, 19. This, however, does not negate the fact that such pages were cited and heavily relied upon by the ALJ when making his credibility determination.

outstanding credibility issues that must be resolved before a determination of disability can be made, and because it is clear from the record that the ALJ would be required to find the claimant disabled were he found to be credible and the VE's testimony credited, further proceeding would serve no useful purpose. *Harman*, 211 F.3d at 1178; *Smolen*, 80 F.3d at 1292. Accordingly, remand for an award of benefits is proper.[4]

### B.  The ALJ Failed to Properly Address the Medical Expert's Testimony

The ALJ's written opinion acknowledges full agreement with the testimony of Dr. Lewy, the medical expert ("ME"), at step three and step four. *See* AR at 16-17, 21. Indeed, in finding sufficient "medical improvement" to terminate benefits on February 1, 2004, the ALJ relied primarily, if not solely, on the ME's conclusions regarding the effect of medication on plaintiff's severe impairments. AR at 21, 23. *See, e.g.*, AR at 21 ("I find that the claimant's disability ended on February 1, 2004 because the claimant's symptoms were stabilized by then on his medication. *See* testimony of Dr. Lewy.").

This constitutes reversible error. The ME never testified or otherwise concluded that plaintiff's condition had "improved." Rather, upon his review of the entire medical record, the ME concluded that the plaintiff continued to have marked limitations in concentration, persistence, and pace, and further stated as follows:

> What the record shows, Your Honor, is that there is essentially chronic depression which may have been kept stable by the medications that Mr. Williams takes, although it hasn't led to any remission in his depression. There is ongoing flat affect, reports of fatigue, sleep disturbance, lack of energy.

AR at 555.

This statement reflects ongoing impairments, or no change in plaintiff's condition, either positive or negative. Such an interpretation is further corroborated by the ME's conclusion, at the date of the hearing, that the plaintiff continued to suffer from the marked

---

[4] Because this finding results in a remand for the award of benefits, the Court eschews an exhaustive analysis of the additional reversible errors in this case.

REPORT AND RECOMMENDATION
PAGE – 10

limitations in concentration, persistence, and pace that would "make[] it difficult for a person to work." *See* AR at 560; *see also* AR at 556 (testifying "*at this point*, Your Honor, I see . . . marked limitations in concentration, persistence, and pace.") (emphasis added).[5]

In his brief, the Commissioner insists that the ALJ equated medical stabilization with medical improvement, and argues that this conclusion was not unreasonable. The Court disagrees because the applicable regulations do not permit such a definition. Rather, medical improvement is defined as "any *decrease* in the medical severity of [the claimant's] impairment(s)," a determination which "*must* be based on changes (*improvement*) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1) (emphasis added); *see also id.* § 404.1594(b)(3) (explaining that a medical improvement may warrant the termination of benefits if it creates an "*increase* in [the] functional capacity to do basic work activities.") (emphasis added). Under this or any similar definition, while the Court can conceive of many rational interpretations of the ME's testimony, the Court finds that it would be irrational to conclude that the ME found medical *improvement*, as opposed to a lack of remission or subsidence.

### C.     The ALJ Erred in His Conclusions Regarding the Plaintiff's Physical RFC

While the foregoing analysis alone supports a remand for the award of benefits, the Court also notes that the ALJ's concluded that plaintiff retained the RFC "to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to sit and to stand and/or walk intermittently for a total of six hours in an eight hour workday." AR at 22. The Commissioner argues that this finding suffers from, at most, "a semantic lack of clarity," and is curable by a remand for further proceedings. Dkt. No. 20 at 13-14. Alternatively, the Commissioner argues that the ALJ's above-quoted finding could be reasonably interpreted as a

---

[5]  If, as it appears, the ALJ agreed with the ME's conclusions, the plaintiff's testimony, and Dr. West's opinions in this regard, plaintiff would be disabled pursuant to Medical-Vocational Rule 201.14. This conclusion is discussed further below. *See infra* § VII.C.

REPORT AND RECOMMENDATION
PAGE – 11

finding that plaintiff "could sit six hours total, stand six hours total, and walk six hours total" in a single workday. Dkt. No. 20 at 13.

The Court disagrees with both arguments. First, if plaintiff can work for only six hours in a workday at step five, he is disabled, as discussed below. *See* 20 C.F.R. § 404, Subpt. P., App. 2, Table 1, R. 201.14 (2006); SSR 96-8p. Second, if the ALJ determined that the plaintiff could perform these three activities "*for a total*" of six hours a day, it therefore follows that plaintiff would be unable to stand or walk for an additional total of the same period, and thus would be unable to perform light work. This conclusion is corroborated by the ALJ's statement that his "assessment of the claimant's physical abilities is . . . generally consistent with a consultative examination from March of 2004 with [Dr.] Raymond West," who specifically opined that plaintiff could stand or walk for a total of only *four* hours in a given workday. AR at 18 (citing AR at 291). Third and finally, while the ALJ's RFC determination could theoretically produce several rational interpretations, an eighteen hour functional capacity would not be one of them.

Accordingly, under the foregoing finding as stated by the ALJ and corroborated by the ME, VE, and the medical record, plaintiff is disabled pursuant to Medical-Vocational Rule 201.14. Specifically, if plaintiff had marked limitations in concentration, persistence, and pace, and was unable to stand or walk for six hours in an eight-hour workday, he would be limited to sedentary work, not light work. SSR 83-10. Plaintiff was fifty-one years of age in February 2004, has a high school education, and was found by the ALJ to possess no transferrable skills. AR at 23. A claimant with a high school education and an RFC which limits him to sedentary work is disabled at step five upon his fiftieth birthday if he lacks skills transferrable to other work. 20 C.F.R. § 404, Subpt. P., App. 2, Table 1, R. 201.14 (2006).

REPORT AND RECOMMENDATION
PAGE – 12

D.  <u>No Outstanding Issues Must be Resolved Before a Disability Determination Can be Made, and the Evidence of Record Requires the ALJ to Find the Plaintiff Disabled During the Relevant Period</u>

In light of the foregoing analysis, remanding this case for further proceedings simply to re-apply each step of the "medical improvement" analysis, or solely to give the ALJ a chance to correct other minor errors would "serve no useful purpose and would unnecessarily extend [plaintiff]'s long wait for benefits." *Benecke*, 379 F.3d at 595.  Specifically, the Court finds that the plaintiff's testimony was erroneously rejected based on a criminal history report of a third party, and should be credited in light of the ALJ's remaining credibility finding and agreement with the conclusions of the ME.  The plaintiff's testimony, when coupled with the conclusions of the VE, the ME, and the balance of the record, establish that plaintiff is unable to perform his past relevant work or engage in other substantial gainful activity available in significant numbers in the national economy.

## VIII.  CONCLUSION

The ALJ failed to provide legally sufficient reasons for finding the plaintiff not fully credible and failed to properly address the ME's testimony, both of which led to further errors, as discussed above.  No outstanding issues must be resolved before a determination of disability can be made, and the ALJ would be required to find the claimant disabled upon the evidence provided and the conclusions that have already been made.  Accordingly, this case should be REVERSED and REMANDED for an award of benefits.  A proposed order accompanies this report and recommendation.

DATED this 5th day of September, 2007.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge